## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 17 2018, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Renee M. Ortega
Lake County Juvenile
Public Defender's Office
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:
J.R.E., Jr. (Minor Child),

and

R.F. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

January 17, 2018

Court of Appeals Case No.
45A04-1708-JT-1843

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Jr., Judge

Trial Court Cause No.
45D06-1701-JT-17

**Baker, Judge.**

[1] R.F. (Mother) appeals the trial court's order terminating her relationship with J.R.E., Jr. (Child), her minor child. Mother argues that there is insufficient evidence supporting the termination order. Finding the evidence sufficient, we affirm.

## Facts

[2] Child was born to Mother in April 2015.[1] He was born at twenty-nine weeks gestation, weighing only one pound, twelve ounces, and testing positive for marijuana. At the time of his birth, Mother was homeless and unreachable by hospital employees for days at a time following her discharge. On May 12, 2015, the Department of Child Services (DCS) filed a petition alleging that Child was a child in need of services (CHINS). Child remained hospitalized until June 10, 2015, when he was initially placed in a foster care facility and ultimately placed in relative care with his paternal aunt and uncle, with whom he has remained since that time. They plan to adopt him if the termination order becomes final.

[3] The trial court eventually found that Child was a CHINS and ordered Mother to participate with the following services: substance abuse assessment, parenting assessment, home based case management, clinical assessment,

---

[1] Child's father voluntarily terminated his parental rights and is not participating in this appeal. In July 2016, the parents had another child who is also currently a ward of DCS because Mother did not have stable housing and the child showed signs of drug withdrawals at the time of birth. That child is not part of this appeal.

inpatient substance abuse treatment, random drug and alcohol screens, psychological evaluation, individual therapy, and supervised visitation.

[4] As a child, Mother and her family were involved with DCS. She began using drugs at the age of eleven. Mother admits that for a lengthy period following Child's birth and during the CHINS case, she continued to regularly use illegal drugs, including methamphetamine, marijuana, synthetic marijuana, and Xanax without a prescription. She also admits that her drug use caused her to miss many scheduled appointments with service providers and to become violent towards those around her.

[5] At some point, DCS referred Mother to Genesis Outreach, an inpatient substance abuse rehabilitation program in Fort Wayne. Mother was sporadically violent while at Genesis, at one point violently ripping a showerhead out of the wall while she was bathing. Her treatment regimen became a revolving door, with Mother being repeatedly kicked out and accepted back into the program at regular intervals because of her violence and other behavioral problems. Mother was never able to advance past the first level of her treatment plan. On May 12, 2017, which was Mother's birthday, she left Genesis permanently because staff would not allow her to consume alcohol at the facility or leave the facility to do so. After she left, Genesis staff found a medication in her belongings that patients commonly use to get high because it is not detectable through traditional drug screening methods.

[6] Mother claims that she has refrained from substance abuse since February 2017. She admits, however, that she regularly drinks alcohol. She also admitted that she increased her alcohol consumption in the days leading up to the termination hearing. And she did not submit to any drug screens between May 2017, when she left Genesis, and July 2017, in the weeks leading up to the termination hearing.

[7] In addition to substance abuse, Mother has struggled with violence and domestic violence throughout these proceedings. During Child's hospitalization following his birth, Mother and Child's father became involved in an altercation at the hospital, leaving Mother with bruises on her arm. In November 2016, Mother and her boyfriend got into a fight that led to law enforcement being called to the scene; Mother then became involved in a physical altercation with the responding officers. Mother and her boyfriend were both arrested as a result of the incident. She has been involved in several physical altercations with Child's father and with her sister. Mother admits that her own use of alcohol and illegal drugs causes her to become violent. DCS referred Mother to domestic violence treatment but she did not complete that service.

[8] Throughout the CHINS case, Mother was homeless for lengthy stretches of time, living in cars, shelters, and friends' and relatives' homes She had signed a six-month lease on an apartment in the days leading up to the termination hearing, but was unemployed and had no consistent source of income to pay the rent. She is wholly financially dependent on her boyfriend, whose only

sources of income are seasonal lawn care work and sporadic odd jobs that he performs for out-of-state relatives.

[9] Whether because of substance use or general instability, Mother was inconsistent with visitation with Child throughout the CHINS case. The family case manager testified that "Mom can go a month or two and have consistent visitations. She can also go for a couple months span and not have any visitation." Tr. p. 77. When Mother attended visits, she was often unfocused and "sort of like sleepy," causing observers to be concerned that she was under the influence of one or more substances. *Id.* at 79. Child is not attached to or bonded with Mother. He tolerates short visits with her, but becomes irritable after prolonged contact. She is unable to calm or soothe Child when he acts out, and on multiple occasions, Mother ended visits early because of Child's outbursts. It is undisputed that he is thriving in his relative care placement, that he is bonded to his caregivers, and that they have provided him with a "loving, consistent, and stable family" where "a close, familial, stable relationship has developed and flourished." Appellant's App. Vol. II p. 25.

[10] After Mother left her unsuccessful inpatient treatment at Genesis, in the months leading up to the termination hearing, DCS provided new referrals for services as part of a "final effort to help" Mother reunify with Child. *Id.* at 24. But at the time of the termination hearing, Mother had failed to complete substance abuse treatment, domestic violence counseling, therapy, or a psychiatric evaluation.

[11]     On January 13, 2017, DCS filed a petition to terminate the parent-child

relationship between Mother and Child.  A factfinding hearing was held on July

25, 2017, and on August 2, 2017, the trial court entered an order granting

DCS's petition to terminate.  In pertinent part, the trial court found as follows:

> . . . Mother indicated that she missed her appointments with
> service providers due to her using drugs and not waking up for
> the appointments.  Although mother obviously loves her child,
> mother has not been able to address her substance abuse issues.
>
> ***
>
> After two years of services being provided to mother, mother has
> not been able to remedy the reasons for the original removal of
> this child.  Mother continues with her instability.  Mother
> testified that she obtained employment but quit to go to rehab for
> DCS.  Although mother indicates that she has been clean since
> February 2017, mother continues with her instability.  Mother
> further testified that she still uses alcohol two to three nights per
> week.  Clearly, mother has not addressed her substance abuse
> issues.  Mother has a history of sobriety before court dates, but
> would immediately use after the date has passed.
>
> Mother has not participated in the case plan for reunification.
> Mother did not participate with the service providers.  Mother
> did not complete any aspect of the case plan for reunification.
>
> . . . Mother has a history of domestic violence.  Domestic
> violence counseling was offered for mother and mother did not
> attend.  Mother is living with her current boyfriend to which [sic]
> there has [sic] been numerous domestic violence issues.  The
> abusive pattern continues.

***

. . . Mother only completed the intake portion of therapy, but has not followed up with any actual therapy.

Mother would appear at the visitations clearly under the influence of drugs. The visitation providers had to constantly monitor the visits due to mother not being able to focus on the child. Mother would often times appear very sleepy at the visitations.

***

Mother has clearly demonstrated a pattern of unwillingness to deal with the issues and to cooperate with those providing services. There has been no evidence presented that the conditions have changed. Mother has not completed a substance abuse program, domestic violence counseling, therapy or any other aspect of the case plan. Mother has not shown any pattern of stability in her life.

The child has never been in either parent's custody or care. . . . Neither parent has demonstrated an ability to independently parent this child and provide the necessary care, support and supervision. Even considering mother's recent sobriety, there is no basis for assuming she will continue with her sobriety and complete the necessary services and find herself in a position to care for the child.

***

Neither parent is providing any emotional or financial support for the child. . . .

***

> It is in the best interest of the child and his health, welfare and future that the parent-child relationship between the child and his parents be forever fully and absolutely terminated.

Appellant's App. Vol. II p. 24-25.  Mother now appeals.

# Discussion and Decision

## I.  Standard of Review

Our standard of review with respect to termination of parental rights proceedings is well established.  In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013).  We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand.  *Id.*  Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous.  *Id.*  In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment.  *Id.* at 1229-30.  It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[13]     Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

(A)     that one (1) of the following is true:

    (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)     The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

    (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

# II. Termination Order

## A. Remedy of Reasons For Removal

[14] Mother first argues that DCS did not prove by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside her home will not be remedied.[2] In addressing this prong of the statute, DCS need not rule out all possibilities of change; instead, it must establish a reasonable probability that the parent's behavior will not change. *In re B.J.*, 879 N.E.2d 7, 18-19 (Ind. Ct. App. 2008).

---

[2] Mother also challenges many of the trial court's findings of fact. We will address these arguments within our analysis of the termination order.

Here, the reasons that Child was initially, and continued to be, placed outside of Mother's care and custody can be summarized as substance abuse, unstable housing and employment, and domestic violence.

# 1. Substance Abuse

Perhaps the most significant reason for Child's initial and continued placement outside of Mother's care is Mother's struggles with substance abuse. Throughout two years of the CHINS case, she has never successfully completed substance abuse treatment, either inpatient or outpatient. She admitted that she continued to abuse substances throughout much of the case. When Mother finally enrolled in inpatient treatment, she was frequently kicked out because of her violent behavior. She ultimately left inpatient treatment unsuccessfully when they would not allow her to consume alcohol on her birthday. She continues to drink alcohol multiple times per week.

The trial court found that Mother has not successfully addressed her substance abuse issues. She argues that she tested clean while enrolled in inpatient treatment and tested clean in the days leading up to the termination hearing. She claims that she remained clean during the months between her unsuccessful exit from inpatient treatment and July 2017, but the only evidence supporting this assertion is her own testimony. And in fact, there is evidence in the record that in May 2017, Mother was using substances that were known to be undetectable through traditional drug testing methods; she also admitted to using synthetic drugs to give the appearance of sobriety while actually

continuing to feed her ongoing drug addiction. Mother's argument amounts to a request that we assess witness credibility and reweigh the evidence—a request we decline. The record reveals that Mother has never successfully completed substance abuse treatment, meaning that the trial court's finding to that effect was not erroneous.

[18] Mother also argues that the trial court erred by focusing on her admitted alcohol use, contending that she had no history of alcohol abuse. The reason that she left inpatient treatment, however, was her desperate desire to drink alcohol. This, alone, supports a concern for her alcohol use. And when alcohol consumption is placed within the overall picture of Mother's substance abuse issues, it was not unreasonable for the trial court to note it as an issue.

[19] Additionally, Mother quarrels with the trial court's finding that Mother appeared to be under the influence of drugs during some of her visits with Child. The family case manager testified that Mother "appeared under the influence" at visits, to a point that the visitation monitor asked her supervisor to help observe the situation. They reported that Mother "appeared not totally focused on the things. She appeared to—that her eyes were, sort of like sleepy. That she was not being able to provide complete supervision of the child." Tr. p. 79. This evidence supports the trial court's finding.[3]

---

[3] The remainder of Mother's arguments regarding the trial court's findings of fact are mere requests to reweigh the evidence, which we decline to do, or quarrels with specific wording, which we decline to address.

[20] In sum, while we credit the apparent progress that Mother made with respect to substance abuse by the time of the termination hearing, it does not make up for the fact that for two years, she wholly failed to address this very serious problem. We do not find that this small period of alleged sobriety can overcome the two years of a lack thereof such that there is a reasonable probability that this issue will be remedied.

## 2. Instability

[21] Mother has also struggled to maintain stable housing and employment throughout the life of the CHINS case. With respect to employment, she contends that she had to leave her job to enroll in the inpatient program in Fort Wayne. While that may be true, at the time of the factfinding hearing, she had been done with that program for months and had not obtained employment. With respect to housing, Mother was homeless for most of the CHINS case. At the time of the termination hearing, she had just signed a six-month lease for a home, but had no way to pay her rent except for her boyfriend's sporadic income. This evidence supports the trial court's conclusion that there is not a reasonable probability that this reason for Child's removal will be remedied.

## 3. Domestic Violence

[22] Mother has also dealt with domestic violence throughout the CHINS case. Specifically, since the beginning of the CHINS case, she has been involved in physical altercations with Child's father, her sister, and the police. In November 2016, Mother and her boyfriend were both arrested because of a

domestic violence incident. DCS referred Mother for domestic violence treatment but, at the time of the termination hearing, she had not completed that service. She claimed that her therapist told her the treatment was not necessary, but there is no other evidence in the record supporting that assertion. This evidence supports the trial court's findings related to domestic violence and its conclusion that there is not a reasonable probability that this reason for Child's continued placement outside Mother's care will be remedied.

[23] Child has been placed outside of Mother's care and custody for his whole life— over two years at the time of the termination hearing. During those two years, Mother never even came close to unsupervised visits with Child, or even to developing a bond with him. She has had every opportunity to address the underlying issues, and while we applaud the efforts she apparently began to make in the weeks leading up to the termination hearing, unfortunately, it was too little, too late. Her pattern of behavior throughout the case supports the trial court's conclusion that there is not a reasonable probability that the conditions resulting in Child's initial and continued removal from Mother's care will be remedied.[4]

---

[4] The prong of the statute related to the remedy of the reasons for Child's removal and the prong of the statute related to the continuation of the parent-child relationship posing a threat to Child's well-being are phrased in the disjunctive. I.C. § 31-35-2-4(b)(2)(B). As we have found that the evidence supports the former, we need not also consider the latter. We note, however, that the same evidence supporting a conclusion that the reasons for Child's removal are not likely to be remedied would likewise support a conclusion that a continuation of the parent-child relationship would pose a threat to Child's well-being.

# B. Best Interests

[24] With respect to the best interests of Child, there is, of course, all the evidence explored above related to Mother's difficulties with substance abuse, instability, and domestic violence. Additionally, we must consider the fact that Child has *never* lived with Mother—solely because of her own failure to address Mother's issues and participate with court-ordered services. And perhaps because of her sporadic visitation throughout much of the CHINS case, Child and Mother are not bonded. When Mother attended visits, Child became irritable if it was a prolonged encounter, and Mother did not have the skill set to soothe Child. More than once, she ended a visit early because of her inability to manage the toddler's toddler-like behavior.

[25] Mother had two years to work on addressing her problems. She did not have to have them solved; she merely had to put in enough effort to show that she was committed. But not until the end of those two years, after the termination petition had been filed, did she begin to take steps to address her issues. And even with those steps, she has never completed a substance abuse treatment program, she has not found stable employment, and she has not developed a bond with Child. Under these circumstances, we find that the evidence supports the trial court's conclusion that termination is in Child's best interests.

[26] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.